FILED

## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### ALEXANDRIA DIVISION

2012 JUL 31 P 3: 11

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**CAROL A. FORTI,**
     Appellant

    v.              **BK NO. 10-17415-BFK**
                    **CIVIL ACTION No: 1:12cv-785-GBL-TRJ**

**ANDREW ROSS,**
     Appellee

**RONALD WEBNE,**
     Appellee

**GEORGE TUTTLE,**
     Appellee

**THOMAS GORMAN**
     Appellee

---

### BRIEF OF APPELLANT

Carol A. Forti
Appellant pro se
5-A2 Spa Creek Landing
Annapolis, MD 21403
(410)-626-6055
carolforti393@verizon.net

## TABLE OF CONTENTS

TABLE OF CONTENTS                                          i

TABLE OF AUTHORITIES                                       ii

QUESTIONS PRESENTED                                        iii

STATEMENT OF FACTS                                         1

ARGUMENT                                                   9

## TABLE OF AUTHORITIES

Beall v. Everson, 34 A.2d 41 (D.C.Mun.CtApp 1943).....................................................................6

Bennett v. Kiggins, 377 A.2d 57 (D.C.App. 1977) ......................................................................13

Building Owners and Managers Ass'n of Metropolitan Detroit v. Public Service
Commission, 346 N.W. 581 (1984), judgment aff'd, 383 U.S. 72 (1986) ...............................19, 20

Chandler v. Thompson, 120 Fed 940 (Ct.Appeals 7th Cir 1902).................................................10

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) .............................22, 23

Dreher v. Budget Rent A-Car Sys. Inc., 634 S.E. 2d 324 (2006) .................................................13

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005)..................................17

Feldman v. Gardner, 661 F.2d 1295 (1981)..................................................................................23

Goddard v. Frazier, 156 F.2d 938 (C.C.A. 10th Cir. 1946)..........................................................20

Harbeck v.Smith, 814 F. Supp 2d 608 ..........................................................................................13

Harkins v. Win Corp., 771 A.2d 1025 (D.C.App 2001)...............................................3, 4, 5, 14, 16

Heiser v. Woodruff et al., 327 U.S. 726 (1946)...........................................................................12

Hercules & Co. v. Shama Restaurant Corp., 613 A 2d 916 (1982) .............................................13

Igurtua v. U.S., 625 F. 3rd 592 (2010)..........................................................................................18

In re Continental Engine Co., 234 F. 58 (1916).............................................................................10

In re Thompson, 276 F. 313 (Dist.CtW.D.Pa 1921) ......................................................................10

In re Worthen, 926 P.2d 853 (Utah 1996) .....................................................................................20

Johnston Ambulatory Surgical Associates, Ltd v. Nolan, 755 A.2d 799 (2000)...........................18

Marshall v. Lauriault, 372 F.2d 175 (3rd Cir. 2004) ....................................................................19

Mendes v. Johnson, 389 A.2d 781 (D.C.App 1978)......................................................................16

Pepper v. Litton, 308 U.S. 295 (1939)........................................................................................7, 9

Pink v. A.A.A. Highway Express, 13 S.E. 2d 337 (1941), aff'd 314 U.S. 20 ...............................20

Prentis v. Atlantic Coast Line Co., 211 U.S. 210 (1908).........................................................7, 17

Robinson v. Tyson Foods, Inc., 595 F.3d 1269, Bankr. L Rep (CCH) P81685
(11th Cir 2010).............................................................................................................19

Tanko v. Collier, 187 A.2d 700 (D.C.App 1963) ..........................................................6

Taylor v. Dean, 78 A.2d 382 (D.C.Mun.Ct.App 1951) ..................................................6

Thomas v. State, 44 N.W. 2d 410 (1950) .....................................................................19

Truax v. Corrigan, 257 U.S. 312 (1921) ......................................................................19

Union Travel Associates Inc. v. International Associates, Inc., 401 A.2d 105
(D.C.App 1979) .............................................................................................................5

Vaughan v. Neal, 60 A.2d 234 (D.C.Mun.Ct.App) .......................................................6

Westfield Ins. Co. v. Galatis, 797 N.E. 2d 1256.........................................................23

Wetmore v. Markoe, 196 U.S. 68 (1904) ......................................................................9

World-Wide Volkswagen Corp. v. Woodson, 100 S.Ct 559 Section II (1980)..............20

3D Global Solutions, Inc. v MVM, Inc., 552 F.Supp 2d 1 (USDC 2008)....................13

ii

# QUESTIONS PRESENTED

I.      Whether Judge Mitchell and Judge Kenney failed to follow Supreme Court directives to use the broad equitable powers of the bankruptcy court to examine the validity of the Ross claim and prevent fraud and injustice?............................................................................................. 1

II.     Whether Andrew Ross, Ronald Webne, and George Tuttle are guilty of fraud and conspiracy to commit fraud?.............................................................................. 4

III.    Whether Judge Mitchell and Judge Kenney were confused about the nature of the actions in District of Columbia courts but ignored appellant's attempts to inform them and made no efforts to obtain the facts before issuing orders based on false assumptions?.................................................................................................. 8

IV.     Whether the judgment for Ross should be voided because the trial court and the three-judge Division of the Court of Appeals blatantly violated the Supreme Court rule of stare decisis? ................................................................................................. 10

V.      Whether the judgment for Ross should also be voided given the lack of due process afforded Ms. Forti by the Courts of the District of Columbia?........................................... 11

VI.     Whether Judge Kenney's Order denying Ms. Forti's Motion for a Stay of the Distribution to Andrew Ross Pending Appeal, Motion for Brief Extension of Time to Consult with Constitutional Law and Due Process Experts, and Motion for Expedited Hearing were all abuses of discretion? ................................................................................................... 12

## STATEMENT OF FACTS

In 2001, Ms. Forti decided to rent three rooms in the house she owned at 2936 Garfield

Terrace, N.W. in the District of Columbia. Andrew Ross was one of three renters. In the Contract

for Sharing 2936 Garfield Terrace that she signed with Mr. Ross, Ms. Forti agreed to rent a

bedroom in her home to Mr. Ross from February 5, 2001 through April 30, 2001--a period of

less than 90 days. She also signed Contracts for Sharing with two other renters for the same time-

period. Appellant-owner lived in her home throughout the period of Ross' occupancy. The four

residents shared a common kitchen, dining room, living room, and family room. The three

roomers also shared a bathroom. There were no cooking or bathroom facilities in the room that

Mr. Ross rented. It was simply a room that he used as a bedroom. The only kitchen and dining

facilities in the home were those used in common by the four occupants. Ms. Forti provided pots,

pans, dishes, and silverware for use by all four occupants. There were no locks on the bedroom

doors of roomers. Appellant did not allow roomers to put locks on their doors, because locks

would interfere with her right to enter, inspect, and control use of her home. From the outset of

the sharing arrangement, Ms. Forti reserved the right to inspect the bedrooms of the roomers at

any reasonable hour to determine if there were any hazards present which threatened the lives or

property of the occupants, and she exercised that right weekly with the knowledge and consent

of all three roomers. Appellant also reserved the right to enter the bedrooms of the roomers for

repairs. The Contract for Sharing did not give Mr. Ross exclusive possession or control of the

room that he rented as a bedroom or the right to exclude appellant-owner from that bedroom. At

no time did Ross have exclusive possession of the room that he was renting in Ms. Forti's home.

He was allowed use of the space, but all the rooms in the house were under Ms. Forti's

management and control. Appellee tried twice to put a lock on the door of the room that he used

1

as a bedroom, but appellant-owner removed them less than an hour after he had installed them. It is highly probable that his attorney, Ronald Webne, who specializes in "wrongful evictions," advised Ross to put a lock on his door. Webne's likely reasoning was that if Ross was successful in putting a lock on his door, that might support an argument for "possession" of the room.

Within two weeks after Mr. Ross began sharing her home, he demonstrated to Ms. Forti that he was an unacceptable roomer. He left unfinished "take-out" and sugary soft drinks on the floor of the family room, inviting roaches. He left dirty dishes and pans in the kitchen sink. He presented a serious fire hazard. He insisted on hanging two dead Christmas wreaths in his closet and let his six-year old son play with matches unsupervised in the bedroom while Ross watched television three floors below. He tried to barbecue in the backyard with inappropriate equipment, and if Ms. Forti had not come home just as he was about to strike a match, he would have burned down the trees in her yard as well as her house. He smoked in bed and kept a kerosene lantern next to his mattress. Furthermore, he used illicit drugs while he was living in Ms. Forti's home. In a narcotic stupor, he twice fell asleep in the bathtub, causing the water to overflow the tub, damaging the ceiling and walls below. When the other roomers were not around, Mr. Ross, would ball up his fists, swear profusely at Ms. Forti, and threaten to punch her. According to Montgomery District Court records of his divorce proceeding, which coincided with his renting a room in Ms. Forti's house, Ross was so paranoid and behaved so bizarrely that the judge ordered 10 days of psychiatric evaluation in a mental hospital. According to other documents regarding divorce proceedings initiated by his wife, Mr. Ross suffers from bipolar disorder and/or manic depression and when he refuses to or forgets to take his medicine, he becomes violent. Mr. Ross is 6'6." Appellant was afraid of him—with good reason. According to court records, he had

thrown his wife against a wall, and she had to obtain a Civil Protection Order against him for repeated threats of violence while she was divorcing him.

On at least three occasions, Ms. Forti asked Mr. Ross to find another place to live and move out, but he ignored her and did nothing. Finally, Ms. Forti handed Ross a letter advising him to find another place to live and move out or she would have his property packed up by a moving company and put into storage.

After Ms. Forti had repeatedly asked Ross to find other living quarters and move out but before Ms. Forti took any action to evict him, Ross rushed into Superior Court and verbally told Chief Judge Hamilton that he was a tenant and that he was being evicted. Ross was not a "tenant." He was a "roomer" and there are clear-cut distinctions between the legal status and legal protections afforded "roomers" and "tenants" in the District of Columbia. Judge Hamilton accepted Ross' misrepresentation without question. Ms. Forti tried to explain that under the Court of Appeals decision in Harkins v. Win Corp, 771 A.2d 1025 (2001), Ross was a "roomer" (not a tenant) and that self-help eviction of a "roomer" was legal in the District of Columbia whereas judicial process was necessary to evict a "tenant." Judge Hamilton refused to listen and cut her off. He immediately wrote a TRO directing Ms. Forti "not to interfere with Ross' enjoyment of her home."

Fearful for her safety, the safety of the other roomers, and the safety of her home, Ms. Forti had Ross' belongings boxed up by a moving company and put in storage. She also had the locks on the doors changed. Ross raced back into Superior Court again for another "emergency" hearing. While waiting in the courtroom corridor for a hearing before Judge Stephanie Duncan-Peters. Ross lunged at Ms. Forti and attempted to assault her. Injury to Ms. Forti was only averted by his lawyer, who physically restrained him. At the hearing before Judge

3

Duncan-Peters, Ross repeated his false representation that he was a "tenant" when in fact he was a "roomer." Ms. Forti tried to explain to Judge Duncan-Peters the Court of Appeals' decision in Harkins v. Win Corp., but the judge was not familiar with the opinion and would not let Ms. Forti discuss it with her. She ordered Ms. Forti, on pain of contempt, to return Ross' belongings to her house at her expense and to allow him to live there.  Faced with contempt, Ms. Forti complied with the order but only with great trepidation and fear for her safety. Four days after she readmitted Ross to the house, those fears were realized. She caught Ross using her phone in the kitchen to make personal toll calls and challenged his use of her phone. He screamed at her repeatedly: "Shut the fuck up." He then grabbed both of her wrists and threw her against the counter on the other side of the kitchen, injuring her back. Finally, after numerous trips to the courthouse, Ms. Forti obtained a Civil Protection Order directing Ross to move out of her house immediately. Ross sued Ms. Forti for "wrongful eviction" for violating Judge Hamilton's TRO. He also claimed that he was a "tenant" and that the Contract for Sharing Ms. Forti's house was a lease.

The trial judge's decision that Ross was a tenant as opposed to a roomer and her decision that the Contract for Sharing Ms. Forti's house was a lease as opposed to a license were both errors of law. Ms. Forti immediately appealed. A three-judge Division of the Court of Appeals upheld the trial court's opinion. However, the opinions of both the trial court and the Division were in direct conflict with six prior opinions of the District of Columbia Court of Appeals regarding the differences in legal rights between roomers and tenants and the Court of Appeals' distinctions between a lease and a license. For example, Harkins v. Win Corp., 771 A. 2d 1025 (D.C. App 2001) involved a suit that alleged "wrongful eviction" of Harkins by a rooming house operator. The trial court found that Harkins was a roomer, not a tenant, since he did not have

4

exclusive possession of the room. The trial judge concluded that the common law remedy of self-help to evict a roomer was still permissible though no longer available to evict a tenant. The Harkins opinion goes on to say: "The central conceptual distinction [between a tenant and a roomer] is usually phrased in terms of whether the occupant has or lacks a right of possession or exclusive control..." Harkins, supra at A. "The principal distinction between the two relationships is that the tenant acquires an interest in the real estate and has exclusive possession of the leased premises, while the lodger acquires no estate and has merely the use without actual or exclusive possession." Id. In many, if not all instances, a licensee, such as a roomer or lodger, "may be subjected to self-help eviction," said the Harkins Court, supra at Part A, "whereas a tenant generally may not be so evicted." In Union Travel Associates, Inc v. International Associates, Inc, 401 A.2d 105, 107 (D.C. App 1979), the Court of Appeals discussed the elements of a lease as opposed to a license. In this opinion, the Court said: "A lease confers upon a tenant exclusive possession of the subject premises as against the world, including the owner. It confers an estate in land" A lease is "generally specific as to the property marked for tenancy"....In contrast, a license "confers a personal privilege to occupy the land of another, not a present possessory estate." A "license need not delineate the specific space to be occupied." Id. The Contract for Sharing the house that Ms. Forti signed with Mr. Ross did not define any area over which Mr. Ross had exclusive possession or control or the right to exclude appellant owner, including the bedroom that he occupied. This was consistent with Ms. Forti's intent to confer use but not possession of the bedroom, kitchen, and bath under her management and control. As the editor of Powell on Real Property noted, the notion of control over an area is meaningless without specification of the area subject to control. 2 Powell on Real Property Section 16.02[3][b] at 16-24 (2005). In addition to the opinions above, the Division's opinion was also in

5

direct conflict with the Court of Appeals' opinions in Taylor v. Dean, 78 A.2d 382

(D.C.Mun.Ct.App.1951); Beall v. Everson, 34 A.2d 41 (D.C.Mun.CtApp 1943); Vaughan v.

Neal, 60 A.2d 234 (D.C.Mun.Ct.App.);and Tanko v. Collier, 187 A.2d 700 (D.C.App. 1963). All

of these opinions supported the view that Ross was a "roomer" (not a tenant) and that the

Contract for Sharing Ms. Forti's home was a license (not a lease). Furthermore, the Division

admitted in its Memorandum of Judgment ("MOJ") that it did not consider the Civil Protection

Order that Ms. Forti obtained against Mr. Ross in which the judge directed Ross to vacate her

home immediately. Since court orders in the domestic violence case were submitted as exhibits

at trial, the Division had no excuse not to review that Order.

Under the Supreme Court rule of stare decisis, the trial court and the Division were

required to follow these prior decisions, but they ignored them. The Court of Appeals should be

concerned about uniformity and consistency in its decisions, but apparently it is not.

Assuming that the numerous errors of law by the by the trial court and the Division

would be obvious to a larger group of judges, Ms. Forti filed a Petition for Rehearing en banc on

January 20, 2011. In retrospect, this Petition would have caused less confusion had it been titled

Petition for Hearing en banc. Although Ms. Forti's Petition carefully explained the failure by the

trial court and the Division to follow six precedential decisions by the Court of Appeals and

discussed the due process violations by the trial court and the Division, the D.C. Court of

Appeals denied Ms. Forti's Petition. On April 20, 2012, the District of Columbia Court of

Appeals issued a perfunctory, per curiam order that said nothing about the MOJ by the Division

—either in support or in refutation. The Court of Appeals order made no decisions of fact or law.

In denying Ms. Forti's Petition, the Court of Appeals violated its own Internal Operating

Procedures. "To avoid conflicts in division decisions and to preserve stability of the court's

6

decisions, no subsequent division may overrule a published opinion of a previous division. En banc consideration is required to overrule a previous decision of the court." See Internal Operating Procedures As Revised January 1, 2011, p.12. In Prentis v. Atlantic Coast Line Co., 211 U.S. 210 (1908), the Supreme Court set forth the test as to what constituted a judicial inquiry. That test is unambiguous. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws already supposed to exist. " Prentis, supra at 226. The Supreme Court has never backed away from the test laid out in Prentis. Therefore, the order of the District of Columbia Court of Appeals denying Ms. Forti's Petition was not a judicial inquiry given the test established in Prentis. Neither the District Court nor the Court of Appeals for the 4th Circuit is being asked to review a final state court judgment, because there was no judicial inquiry and there was no judgment based on the facts and the law in the order denying Ms. Forti's Petition.

After a lengthy period of unemployment, Ms. Forti realized that she could no longer make mortgage payments out of savings. She retained Madeline Trainor as counsel and filed for Chapter 13 bankruptcy on September 1, 2010.

By and through counsel Webne, Mr. Ross filed the judgment obtained in Superior Court of the District of Columbia in Circuit Court in Alexandria and sought to enforce it by a forced sale of her home in Alexandria. After Ms. Forti filed for Chapter 13 bankruptcy, local counsel George Tuttle filed, on behalf of Ross an unsecured claim for $150,000 in the bankruptcy proceeding based on the Superior Court judgment. Although Ms. Forti filed numerous, well-documented pleadings informing Judge Mitchell and Judge Kenney that the Ross claims were legally invalid, they failed to follow the Supreme Court directives in Pepper v. Litton, 308 U.S. 295 (1939) and other Supreme Court opinions directing bankruptcy courts to use their broad

7

equitable powers to prevent fraud and injustice. Judge Mitchell and Judge Kenney simply ignored appellant's numerous pleadings.regarding the legal invalidity of the Ross claims. Without briefing by counsel or an evidentiary hearing, Judge Mitchell decided that Ross was an allowed unsecured creditor. Judge Kenny also failed to conduct any independent inquiry regarding the validity of the Ross claims and authorized payment to Ross with interest of more than $189,000.

## ARGUMENT

### I.   BOTH JUDGE MITCHELL AND JUDGE KENNEY IGNORED SEVERAL SUPREME COURT DIRECTIVES THAT BANKRUPTCY COURTS SHOULD USE THEIR BROAD EQUITABLE POWERS TO ENSURE THAT FRAUD AND INJUSTICE DO NOT PREVAIL.

In Pepper v. Litton, 308 U.S. 295, 304-305 (1939), the Supreme Court ruled that bankruptcy courts should use their broad, equitable powers to ensure that "fraud does not prevail," that "substance will not give way to form," and that "technical considerations will not prevent substantial justice from being done." In Pepper, the Supreme Court held that "a bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence," citing Lesser v. Gray, 236 U.S. 70, 74 (1915). "And the mere fact that it has been reduced to judgment does not prevent such an inquiry." Pepper, supra at 304-305; Wetmore v. Markoe, 196 U.S. 68, 72 (1904).

As the Supreme Court stated in Pepper, supra at 304, bankruptcy courts are constituted by Sections 1 and 2 of the Bankruptcy Act (30 Stat. 544) and by the latter section are invested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings." Consequently, the Supreme Court has held that for many purposes "courts of bankruptcy are essentially courts of equity." In Pepper, supra at 305, the Court went on to say that bankruptcy courts have "exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. "In the exercise of its equitable jurisdiction, the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankruptcy estate." Pepper, supra at 307-308. As the merger of a claim into a judgment does not change its nature so far as provability is concerned, the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance. Wetmore v. Markoe,

supra at 72. And the bankruptcy trustee may collaterally attack a judgment offered as a claim against the estate for the purpose of showing that it was obtained by collusion. In re Thompson, 276 F. 313, 319 (District Ct W.D.Pa 1921); In re Continental Engine Co., 234 F. 58, 58 (1916) citing Chandler v. Thompson, 120 Fed. 940, 940 (Ct Appeals 7th Cir 1902).

Through counsel, appellant Forti filed a timely objection to the Ross claims on January 18, 2011 (Docket #41). She disputed the unsecured claim in the amount of $150,000 based on a judgment in Superior Court of the District of Columbia for an alleged "wrongful eviction" of Mr. Ross from her home where she herself lived. In that pleading, appellant stated that she did not believe that she owed this money to appellee Ross. She objected to his Proofs of Claim and asked that these claims be disallowed. In docket entry #105, entered 01/03/12, Ms. Forti informed the court that the Ross claim is not legally valid and that Ross is a fraudulent claimant.

Appellant made a concerted effort to inform Judge Mitchell about the illegitimacy of the Ross claims. See Docket entry #41 filed 01/18/11, The Rebuttal of Carol A. Forti...; entry #42, Debtor's Objection to Allowance of Claim filed 01/13/11. Appellant's efforts, however, were for nought. Judge Mitchell completely ignored appellant's objections to the Ross claims, and he completely ignored the Supreme Court's directives that bankruptcy courts should use their broad equitable powers to prevent fraud and injustice. He did nothing to determine the validity of the Ross claims despite numerous pleadings filed with the Court by appellant in which she effectively implored him to conduct an inquiry. Instead, at a hearing on January 19, 2011, he stated: "I'm going to sua sponte lift the automatic stay to allow the appeal [Petition for Rehearing en banc] in the District of Columbia to go forward, but I do say both to the debtor and her attorney: It's one thing to hold matters at bay for a year while the property is attempting to be sold but I'm not going to grant any extensions of that time. Basically what I'm doing is

10

provisionally confirming the plan but if the house isn't sold and the proceeds paid to the trustee by the thirteenth payment due under the plan, I'm very likely at that point either to dismiss the case or to convert it to a Chapter 7." Tr., January 19, 2011, p. 38.

Furthermore, Judge Mitchell filed the following Order on January 21, 2011: "The plan filed by the debtor on September 10, 2010 is confirmed on the condition that the funds necessary to pay all allowed unsecured claims in full, with interest from the date of the petition at the rate specified in 28 U.S.C. section 1961 shall be paid to the trustee not later than the due date of the 13th monthly payment due in this case." In a preface to the Order, Judge Mitchell claims that he issued this Order based on an "evidentiary hearing" held on January 19, 2011. However, at the referenced evidentiary hearing, there was no discussion whatsoever about the validity or legitimacy of the Ross claims. Nevertheless, Judge Mitchell, without briefing by counsel or examining any evidence, decided that Ross was an allowed unsecured creditor to be paid in full with interest.

Given the Court's conditional confirmation of Ms. Forti's Plan, which included paying unsecured creditor Ross in full, appellant's counsel withdrew objection to the Ross claim without prejudice to bringing the objection again. Judge Mitchell responded: "I'll go ahead and show the objection as withdrawn without prejudice." See Tr., February 23, 2012, p. 3. On May 9, 2012, appellant Forti (debtor below) appealed the judgment, order, or decree of Judge Kenney entered on April 30, 2012, which had approved the Trustee's proposed distribution to Andrew Ross of $189,772.56. Ms. Forti did not object to the other distributions, but she objected strenuously to the distribution to Andrew Ross.

Following Judge Mitchell's retirement and reassignment of the case to Judge Kenney, appellant continued her efforts to inform the Court regarding the invalidity of the Ross'

11

judgment.  See Docket entry #105, Opposition to Andrew Ross' Amended Motion... ; Docket

Entry 105-1, Petition for Rehearing en banc; Docket entry 115, Notice of the Debtor Having

Filed a request for Expedited Hearing...plus a copy of the Motion; and Docket Entry # 147:

Objection to Distribution to Andrew Ross.  However, like Judge Mitchell, Judge Kenney also

ignored all of appellant's attempts to inform the court about the unlawful nature of the Ross

claim. In an Order filed 04/26/12, Judge Kenney simply reiterated Judge Mitchell's decision that

Ross was an allowed unsecured creditor, though he couched it in somewhat different terms. "It

appearing to the court that Mr. Ross' claim is an allowed unsecured claim by virtue of the

withdrawal of debtor's objection on February 23, 2011"...the motion to determine interest [on

Mr. Ross' claims] is granted. Docket entry #150 entered 04/26/12.  On the same day, Judge

Kenney entered another Order overruling appellant's objection to entry of the order approving

distribution to Mr. Ross "citing a previous ruling that the Chapter 13 Trustee is authorized and

directed to pay the Ross claim with interest upon notice that the D.C. Court of Appeals has

denied Debtor's petition for rehearing en banc." Like Judge Mitchell, Judge Kenney made no

independent inquiry into the legitimacy of the Ross claim despite numerous pleadings by

appellant, including Docket entry #165 entered 05/09/12. Both Judge Mitchell and Judge Kenney

ignored the Supreme Court's instructions that bankruptcy courts use their broad equitable powers

to prevent fraud and injustice.

## II      ANDREW ROSS, RONALD WEBNE, AND GEORGE TUTTLE ARE ALL GUILTY OF FRAUD AND CONSPIRACY TO COMMIT FRAUD.

A bankruptcy court may exercise equity powers in bankruptcy proceedings to set aside

fraudulent claims, including a fraudulent judgment where the issue of fraud has not been

previously adjudicated. Heiser v. Woodruff et al., 327 U.S. 726, 732 (1946).  The issue of fraud

12

in the case of <u>Ross v. Forti</u> has never been litigated. Since the Bankruptcy Act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment was procured by fraud of a party. <u>Heiser</u>, <u>supra</u> at 736.

With respect to fraud claims, Virginia "applies the doctrine...that the place of the wrong governs all matters related to the basis of the right of action." <u>Harbeck v. Smith</u>, 814 F. Supp 2d 608, 620 citing <u>Dreher v. Budget Rent A-Car Sys. Inc</u>, 634 S.E. 2d 324 (2006). At common law, the requisite elements of fraud in District of Columbia courts is (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with an intent to deceive, and (5) an action that is taken in reliance upon the representation. <u>Bennett v. Kiggins</u>, 377 A.2d 57, 59 ( D.C.App. 1977). The case of <u>3D Global Solutions, Inc. v. MVM, Inc.</u>, 552 F. Supp. 2d 1, 8 (USDC D.C. 2008) shares that view of the elements of fraud in the District of Columbia. "A plaintiff must prove a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; and (5) an action that is taken in reliance on the representation." <u>Global Solutions</u>, <u>supra</u> at 8 citing <u>Hercules & Co. v. Shama Restaurant Corp.</u>, 613 A. 2d 916, 923 (1982).

Numerous instances of fraud by Andrew Ross and his counsel, Ronald Webne before trial and at trial in Superior Court led to a decision for "wrongful eviction" in Ross' favor with the jury awarding $50,000 in compensatory damages and $100,000 in punitive damages. Attorney Webne specializes in "wrongful evictions," and Ross admitted to Appellant during the time that he was renting a room in her house that he and Webne conspired to file a suit for "wrongful eviction" from the day that Ross began living in Ms. Forti's home. After Ms. Forti had asked Ross three times to find other accommodations and move out, but <u>before</u> Ms. Forti took any action to evict him, Ross rushed into Superior Court and verbally told Chief Judge Hamilton that

13

he was a tenant and that he was being evicted. However, Ross was not a "tenant." He was a "roomer" and there are clear-cut distinctions between the legal status and legal protections afforded "roomers" and "tenants" in the District of Columbia. Judge Hamilton accepted Ross' misrepresentations without question. Ms. Forti tried to explain that under the Court of Appeals decision in Harkins v. Win Corp, 771 A.2d 1025 (2001), Ross was a "roomer" (not a tenant) and that self-help eviction of a "roomer" was legal in the District of Columbia whereas judicial process was necessary to evict a "tenant." It was clear that Judge Hamilton was not familiar with the opinion. He refused to listen and cut her off. He immediately wrote a TRO directing Ms. Forti "not to interfere with Ross' enjoyment of her home." Judge Hamilton did not, as Mr. Tuttle contended, in docket entries #19 and #28-1 say anything about Ross' "tenancy."

On numerous occasions, Ross swore at Ms. Forti, balled up his fists, and threatened to punch her. Ross is 6'6", and Ms. Forti was afraid of him. Fearful for her safety, the safety of the other roomers, and the safety of her home, Ms. Forti had Ross' belongings packed up by a reputable moving company and put in storage. She also had the locks on the doors changed. Ross raced back into Superior Court seeking an "emergency" hearing. At a hearing before Judge Stephanie Duncan-Peters, Ross repeated his false representation that he was a "tenant" when in fact he was a "roomer." Ms. Forti tried to explain to Judge Duncan-Peters the Court of Appeals' decision in Harkins v. Win Corp., but the judge was not familiar with the opinion and would not allow Ms. Forti to discuss it with her. She ordered Ms. Forti, on pain of contempt, to return Ross' belongings to her house at her expense and to allow him to live there. Faced with contempt, Ms. Forti complied with the Order but only with great trepidation and fear for her safety. Four days after she readmitted Ross to the house, those fears were realized. She caught Ross using her phone in the kitchen to make personal toll calls and challenged his use of her phone. He

14

screamed at her repeatedly: "Shut the fuck up." He then grabbed both of her wrists and threw her against the counter on the other side of the kitchen, injuring her back. Finally, after numerous trips to the Domestic Violence unit of Superior Court, Ms. Forti obtained a Civil Protection Order directing Ross to move out of her house immediately. Ross then sued for "wrongful eviction" on grounds that Ms. Forti had violated Judge Hamilton's TRO, that he was a tenant as opposed to a roomer, and that the Contract for Sharing Ms. Forti's home was a lease as opposed to a license.

At trial in Superior Court, Ross claimed that his computer was broken and a camera was missing as a result of Ms. Forti's moving his belongings into storage; however, at an earlier hearing, he told the court that all of his belongings were returned to him in good order. At trial, Ross claimed that he "suffered great emotional distress" as a result of the eviction when his pain was actually caused by his wife divorcing him and the court refusing visitation rights with his son after the judge concluded that Ross was a danger to himself and others. Counsel Webne alleged in pleadings and at trial that Ms. Forti's violation of Judge Hamilton's TRO (which had been fraudently procured), was proof of malice toward Ross and grounds for punitive damages. The jury awarded $100,000 in punitive damages and $50,000 in compensatory damages, which was upheld by a three-judge Division of the Court of Appeals. Mr. Webne told the jury that Ms. Forti harassed Mr. Ross when he resumed living in her house. This statement was totally false. Ms. Forti wanted nothing to do with Mr. Ross, but apparently the jury believed Mr. Webne's misrepresentation. George Tuttle (Ross' local counsel in the bankruptcy proceeding) blatantly misrepresented the facts in pleadings filed in support of Ross' unsecured claim for $150,000 in the bankruptcy proceeding based on the Superior Court judgment. Footnote 1 in docket entries #19, #28-1,#39, #91 and #101, all entered by Mr. Tuttle, is an excellent example of the

15

deviousness of Mr. Ross and his two attorneys, Ronal Webne and George Tuttle. While it is true that court process is required to evict a tenant, <u>Mendes v. Johnson</u>, 389 A. 2d 781 (D.C.App 1978), Ross was not a tenant. He was a roomer or lodger, and the Contract for Sharing that Ross and Ms. Forti signed for use of her home was a license—not a lease.  In <u>Harkins v. Win Corps.</u>, 771 A. 2d 1025 (D.C.App. 2001), the D.C. Court of Appeals clarified its decision in <u>Mendes</u>. It said that self-help eviction of a roomer or lodger was still legal (as opposed to a tenant) and that no 30-day notice was required. Nevertheless, Mr. Tuttle included the following footnote in five pleadings. "Court process is required to evict tenants in the District of Columbia.  <u>Mendes v. Johnson</u>, 389 A.2d 781 (D.C. 1978). Self-help evictions, such as the one to which Ms. Forti resorted, give rise to a cause of action in tort. Id. At 787." That statement is true with respect to tenants, but it is utterly false with respect to "roomers." Self-help evictions are legal in the District of Columbia with respect to "roomers," and for all the reasons appellant has explained in numerous pleadings entered in this case, Ross was a "roomer." It appears that Judge Mitchell and Judge Kenney accepted this footnote by attorneys Tuttle and Webne as fact.

## III.   JUDGE MITCHELL AND JUDGE KENNEY WERE CONFUSED ABOUT THE NATURE OF THE ACTION IN DISTRICT OF COLUMBIA COURTS, BUT THEY IGNORED APPELLANT'S ATTEMPTS TO INFORM THEM AND MADE NO ATTEMPTS TO OBTAIN THE FACTS BEFORE ISSUING ORDERS BASED ON FALSE ASSUMPTIONS.

The nature of the action in District of Columbia was as follows. In response to the Division's per curiam Memorandum of Judgment ("MOJ"), Ms. Forti filed a Petition for Rehearing en banc on January 20, 2011. (Appellant acknowledges that the way she titled her Petition probably contributed to the Court's confusion. She sees now that she should have titled it, Petition for Hearing en banc.) Although Ms. Forti's Petition carefully explained the failure by the trial court and the Division to follow six precedential decisions by the Court of Appeals and

discussed the due process violations by the trial court and the Division, the D.C. Court of Appeals denied Ms. Forti's Petition. This serious abuse of discretion should be reviewed.

On April 20, 2012, the District of Columbia Court of Appeals denied Ms. Forti's Petition in a perfunctory, per curiam order that said nothing about the MOJ by the Division — either in support or in refutation. In its order, the Court of Appeals order made no decisions of fact or law. In Prentis v. Atlantic Coast Line Co., 211 U.S. 210 (1908), the Supreme Court set forth the test as to what constituted a judicial inquiry. That test is unambiguous. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws already supposed to exist. " Prentis, supra at 226. The Supreme Court has never backed away from the test laid out in Prentis. Therefore, the per curiam order of the District of Columbia Court of Appeals denying Ms. Forti's Petition was not a judicial inquiry or adjudication given the test established in Prentis. Neither the District Court nor the Court of Appeals for the 4th Circuit is being asked to review a final state court judgment, because there was no judicial inquiry and there was no judgment based on the facts and the law in the order denying Ms. Forti's Petition.

Neither does the Rooker-Feldman prevent the District Court from hearing this case. The Rooker-Feldman doctrine is confined to cases brought by persons who have lost in state court challenging state court judgments before the district court proceeding commenced. In Exxon Mobil Corp. v. Saudi Basic Industries Corp, 544 U.S. 280, 544 (2005), the Supreme Court held that subsequent entry of judgment by a state court did not deprive the district court of jurisdiction under the Rooker-Feldman doctrine. Thus, the Rooker-Feldman doctrine does not apply to the case at bar, because Ms. Forti filed a Voluntary Petition under Chapter 13 on September 1, 2010 in the Bankruptcy Court for the Eastern District of Virginia. The D.C. Court of Appeals did not

deny her Petition for Rehearing en banc until April 20, 2012—five months after she filed it (December 21, 2011).

In an Order entered on 01/21/11, Judge Mitchell stated that he was lifting the automatic stay to "allow the Court of Appeals to hear and adjudicate her appeal of a <u>final judgment</u>."(Underlining added.) Judge Mitchell was mistaken. It was not a final judgment. In an Order entered on 05/23/12, Judge Kenney stated: "The Debtor has had a trial in Superior Court, appealed the matter to the District of Columbia Court of Appeals, and petitioned the Court of Appeals to <u>rehear</u> the matter en banc." (Underlining added.) As appellant has already acknowledged, her Petition would have been more accurately titled, Petition for Hearing en banc. What Judge Kenney fails to acknowledge is that the trial court and the three-judge Division of the Court of Appeals blatantly violated the rule of stare decisis and failed to follow six prior decisions of the Court of Appeals with which their opinions were in direct conflict.

## IV.  THE JUDGMENT FOR ROSS SHOULD BE VOIDED BECAUSE THE TRIAL COURT AND THREE-JUDGE DIVISION OF THE COURT OF APPEALS BLATANTLY VIOLATED THE SUPREME COURT RULE OF STARE DECISIS.

Under the Supreme Court rule of stare decisis, courts are required to follow the common law as it has been judicially declared in previously adjudicated cases.  The doctrine also dictates that courts should adopt the reasoning of earlier judicial decisions if the same points are raised again. <u>Johnston Ambulatory Surgical Associates, Ltd v. Nolan</u>, 755 A.2d 799 (2000). Stare decisis incorporates two principles: (1) a court is bound by its own prior legal decisions unless there are substantial reasons to abandon a decision  (there were no such reasons in <u>Ross v. Forti</u>) and (2) a legal decision rendered by a court will be followed by all courts inferior to it in the legal system. <u>Igurtua v. U.S.</u>, 625 F.3d 592, 603 (2010). Under this rule,  the trial court and the three-judge Division were required to follow six precedential decisions by the  District of

18

Columbia Court of Appeals that supported the conclusion that Ross was a "roomer" in Ms.

Forti's house (not a "tenant") and that the Contract for Sharing Ms. Forti's house was a

"license" (not a "lease"). Since Ross, under these decisions, was a roomer and the Sharing

Contract was a license, it was perfectly legal for Ms. Forti to use self-help to evict him. On the

other hand, if these cases supported the view that Ross was a tenant, Ms. Forti would have had to

evict him through judicial process. Under the "prior precedent rule," the Court of Appeals is

bound to follow a prior binding precedent unless or until it is overruled by the Court en banc or

by the Supreme Court. Robinson v. Tyson Foods, Inc., 595 F.3d 1269, Bankr. L Rep (CCH) P

81685 (11th Cir. 2010). None of the six prior cases discussed in Ms. Forti's Petition have been

overruled. Thus, all inferior courts (trial court and the three-judge Division of the Court of

Appeals) as well as the District of Columbia Court of Appeals were required to follow them.

Given the blatant failure by the trial court and the Division to follow precedent, the District of

Columbia Court of Appeals was required by its own operating procedures to grant Ms. Forti's

Petition to ensure consistency in its opinions. Instead, the court denied her petition for a hearing

and issued its Order per curiam

## V.   THE JUDGMENT FOR ROSS SHOULD ALSO BE VOIDED GIVEN THE LACK OF DUE PROCESS AFFORDED MS. FORTI BY THE COURTS OF THE DISTRICT OF COLUMBIA.

The judgment for Ross should also be voided given the lack of due process afforded Ms.

Forti by the courts of the District of Columbia. Due process has been defined to mean a law that

hears before it condemns, that proceeds on inquiry, and renders judgment only after trial. Truax

v. Corrigan, 257 U.S. 312 (1921). Due process of law applies to ordinary judicial process or

proceedings in court. Marshall v. Lauriault, 372 F. 2d 175 (3rd Cir. 2004); Thomas v. State, 44

N.W. 2d 410 (1950). The principle of fairness underlies the right to due process. Building

19

Owners and Managers Ass'n of Metropolitan Detroit v. Public Service Commission , 346 N.W.

581 (1984), judgment aff'd, 383 U.S. 72 (1986). Due process is the observance of the

fundamental fairness which is essential to the very concept of justice. Goddard v. Frazier, 156 F.

2d 938 (C.C.A. 10th Cir. 1946). It rests on basic fairness of procedure and demands a procedure

appropriate to the case and just to the parties involved. In re Worthen, 926 P.2d 853 (Utah 1996).

"A judgment rendered in violation of due process is void in the rendering state and is not entitled

to full faith and credit elsewhere." World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559,

Section II (1980). By giving the Ross judgment full faith and credit although the trial court and

the Division violated due process, the Bankruptcy Court for the Eastern District of Virginia

transgressed a Supreme Court ruling. It is the essence of due process that one must be given an

opportunity to be heard." Pink v. A.A.A. Highway Express, 13 S.E. 2d. 337, 342 (1941), aff'd,

314 U.S. 20. The District of Columbia Court of Appeals did not give Ms. Forti an opportunity to

be heard.

## VI.    JUDGE KENNEY'S ORDER DENYING MS. FORTI'S MOTION FOR A STAY OF THE DISTRIBUTIION TO ANDREW ROSS PENDING APPEAL, MOTION FOR A BRIEF EXTENSION OF TIME TO CONSULT WITH CONSTITUTIONAL LAW AND DUE PROCESS EXPERTS, AND MOTION FOR EXPEDITED HEARING WERE ALL ABUSES OF DISCRETION.

Decision making by the Honorable Brian F. Kenney should be reviewed for abuse of

discretion. Judge Kenney entered an Order granting Trustee's Distribution Motion on May 1,

2012 even though Ms. Forti's counsel advised the Chapter 13 Trustee that Ms. Forti was

preparing a Motion seeking a one-week extension of the distribution date (so that she could

consult with three constitutional law and due process experts) and a Motion for Expedited

Hearing. Ms. Forti filed these motions on April 27 and April 30, 2012.Judge Kenney violated

Ms. Forti's due process rights when he denied both of these legitimate and appropriate motions without any justification.

Judge Kenney seriously misrepresented the facts when he stated in an Order entered April 26, 2012, that "Debtor's Objection (to the Order for distribution) fails on the first count— she has made no showing of the likelihood of success on the merits." In actuality, Judge Kenney did not give Ms. Forti the opportunity to show likelihood of success on the merits. He denied Ms. Forti's Motion for an Expedited Hearing at which she planned to make the requisite showing. She would have demonstrated at the expedited hearing that the likelihood of success on the merits is, in fact, excellent. She demonstrated her strong likelihood of success on the merits in her Motion to Stay Distribution to Andrew Ross Pending Appeal and she would have demonstrated the strong likelihood of success on the merits at oral argument if Judge Kenney had not denied her Motions for a Brief Extension of Time (to consult three constitutional law and due process experts) and her Motion For Expedited Hearing.

In the April 26, 2012 Order, Judge Kenney also made the false statement that "Debtor has been afforded due process by the Courts of the District of Columbia." Judge Kenney has never examined the process afforded Ms. Forti by the trial court or by a three-judge Division of the Court of Appeals. If he had, he would have to admit that his statement about Ms. Forti receiving due process by the courts of the District of Columbia has no basis in fact.

The second factor in considering Appellant's Motion to Stay Distribution to Andrew Ross Pending Appeal is whether appellant will be irreparably injured absent the stay. Ms. Forti will suffer irreparable injury unless a stay is granted. The $189,000 that the Chapter 13 Trustee proposed to distribute to Andrew Ross for his alleged "wrongful eviction" represents all the equity that Ms. Forti had in her home before she had to sell it to satisfy her mortgage obligation.

She had previously exhausted her savings trying to maintain herself during a long period of unemployment. Although Ms. Forti has been actively looking for work, she has not been able to find it. Consequently, she is living on Social Security of only $830 per month. It is beyond question that Ms. Forti would be irreparably injured absent a stay of Judge Kenney's distribution order as it applies to Andrew Ross. She had counted on these funds to make a new start and find another place to live.

The third factor in considering a stay is whether issuance of the stay will substantially injure other parties interested in the proceeding. A stay will produce no injury to Andrew Ross. If appellee prevails, the only injury he would suffer would be a brief delay in receiving the Chapter 13 Trustee's proposed distribution. That doesn't begin to compare with the loss of $189,000 to Ms. Forti.

The fourth factor in considering a Motion for Stay of an order is where the public interest lies. Ms. Forti believes that the public interest lies in seeing that state courts follow the Supreme Court rule of stare decisis, which the trial court and Division completely ignored, and that they provide fundamental fairness and due process in court proceedings. Judge Kenney, on the other hand, believes that the public interest lies in "finality of judgments." See Judge Kenney's Order entered April 26, 2012. Clearly, finality of judgments does not begin to compare in importance to fundamental fairness and due process, a constitutional right.

Judge Kenney cited District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) in support of the statement in his April 26, 2012 Order that "federal courts do not sit as courts of appeal to State courts (other than a petition for certiorari to the Supreme Court)." Feldman, however, is readily distinguishable from the case at bar. In Feldman, the Supreme Court decided that the District of Columbia Court of Appeals had fully litigated Feldman and

22

Hickey's petitions for admission to the District of Columbia Bar. Secondly, the Supreme Court recognized that District of Columbia Public Law 91-358 gives the District of Columbia Court of Appeals plenary authority over all matters regarding the District of Columbia Bar. The suit between Ms. Forti and Mr. Ross was not heard or adjudicated by the District of Columbia Court of Appeals sitting en banc, as she petitioned, and the subject-matter bore no relationship to the District of Columbia Bar.

It is a question of federal law whether a particular proceeding before the District of Columbia Court of Appeals was truly judicial for purposes of ascertaining the jurisdiction of a federal court. Feldman v. Gardner, 661 F.2d 1295, 1310 (1981). As in District of Columbia Court of Appeals v. Feldman, a crucial question in the case at bar is whether the proceeding before the District of Columbia Court of Appeals was judicial in nature. Feldman, supra at 476.

Stare decisis, due process of law, and prevention of fraud are among the most prized protections of the American judicial system. "Well-reasoned opinion becomes controlling precedent, thus creating stability and predictability in our legal system." Westfield Ins. Co. v Galatis, 797 N.E. 2d 1256, at paragraph 43. If the Bankruptcy Court for the Eastern District of Virginia cannot or will not provide these legal protections, the District Court should overrule that Court's Orders.

Respectfully submitted:

Carol A. Forti
Appellant pro se
5-A2 Spa Creek Landing
Annapolis, MD 21403
410.626.6055
carolforti393@verizon.net

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July 2012, I caused the Brief of Appellant to be sent via first-class mail, postage prepaid to

Thomas P. Gorman
Chapter 13 Trustee
300 N. Washington St., Suite 400
Alexandria, VA 22314

and to George Tuttle, counsel for appellee Ross, at 1225 Martha Custis Drive, ParcEast 103, Alexandria, VA 22302.

Carol A. Forti

24